BRADY ET AL. v. THE CITY OF BAYONNE.

57 879
65 474

57 379
66 512

1. Under *Pamph. L.* 1888, *p.* 336, the board of councilmen of the city of Bayonne is empowered to contract for a further water-supply.

2. Where no particular mode has been prescribed by the legislature, any authorized municipal action may be taken by resolution as effectively as by ordinance.

3. Where bids or proposals have not been asked for, the provisions of *Pamph. L.* 1894, *p.* 280, do not control municipal action otherwise honestly exercised.

4. In the execution of a municipal contract for the introduction of water, the point of connection with the city pipe system was left to be designated by the mayor of the city. *Held*, not to be a delegation of legislative power.

5. The provisions of article 1, section 19, of the constitution of New Jersey are not violated by the contract under consideration.

6. Where a contract for a water-supply is silent as to the source from which the water is to be taken, an illegal execution of the contract will not be presumed in aid of the argument that it would be unlawful to go outside of the state for such supply.

On *certiorari.*

Argued at November Term, 1894, before Justices REED and GARRISON.

For the prosecutors, *William W. Anderson,* *Thomas F. Noonan* and *Abram Q. Garretson.*

For the city of Bayonne, *James Benny.*

For Washington & Beall, *Charles L. Corbin.*

The opinion of the court was delivered by

GARRISON, J.   The municipal action brought under review by this writ of *certiorari* comprises a resolution adopted by the board of councilmen of the city of Bayonne recommending the making of a certain contract for a further water-supply for that city, and the contract entered into by the mayor and

council of the city of Bayonne with Washington & Beall, in pursuance of this resolution.

The legality of this action is attacked, first, upon the broad ground that "the mayor and council of the city of Bayonne is without power to provide itself with a water-supply for the general purposes covered by this contract."

The city charter, it is true, confers power in respect to a public water-supply by the limited expression "to provide water for extinguishing fires." *City Charter, p.* 18, § 40.

In the year 1881 a contract was made with Jersey City for a supply of water, and since that time there can be no doubt that whatever water-supply the city of Bayonne has enjoyed (whether lawfully extended beyond the extinguishment of fires or not) has been under the charge and control of its board of councilmen. The act of 1888 (*Pamph. L., p.* 366) expressly empowers any municipal body having charge and control of such water-supply as may exist to contract for a further and other supply. It clearly contemplates an extension of power in respect to the general subject of water, not alone as to its quantity and quality, but also to such other and further public purposes as fall within the proper sphere of municipal trusteeship. Under this statute we think that the board of councilmen of the city of Bayonne is empowered to contract for a water-supply for general purposes.

The second ground for overturning the contract in question is that it was directed by resolution and not by ordinance. The statute by which the power to enter into this contract is conferred has not prescribed any particular method for municipal action, either expressly or by intendment. In such case the rule is that a simple resolution is as effective as an ordinance. *Courter* v. *Newark,* 25 *Vroom* 325, 329.

If, however, in compliance with its charter, it be deemed that municipal action upon the question of a water-supply should be by ordinance, that requirement is met by the general ordinance of July 7th, 1881, the sixth section of which authorized that further action germane to the object of the ordinance might be by resolution.

The third reason is that the contract was awarded without advertising for bids, and that it was not awarded to the lowest bidder. This contention assumes that bids or proposals were asked for by the board of councilmen, pursuant to *Pamph. L.* 1894, *p.* 280. There is no law that compelled the council to advertise for bids, and the testimony taken under the rule in this case shows that; in point of fact, no proposal or bids were asked for by that body. What happened was that certain proposals having voluntarily been made to a committee of council, an arrangement was made between the committee and the bidders for the opening of the proposals before council, not as the result of a request of the body, but by reason of a satisfactory compact between the bidders, probably to insure secrecy as against each other until both were present. The act of 1894 does not apply.

The next criticism is that the contract, instead of fixing the point on the system of pipes now or hereafter to be constructed, at which a union shall be effected with the new water-supply, leaves the designation of such point to the mayor of the city.

I see no ground upon which these prosecutors can question the legality of this provision which, in the execution of this contract, is administrative as distinguished from legislative. The recent case of Kennelly *v.* Jersey City was decided upon the interpretation of a statute, and is not at all in point.

The fifth contention is based upon the section of the contract which provides that if the contractors shall issue mortgage bonds secured on their plant, certain facts shall be endorsed on the bonds by the city, and that the payment of rentals actually earned shall be made to the trustees for the bondholders.

There is nothing in these provisions, properly interpreted, that contravenes article 1, section 19, of the constitution of this state. The city of Bayonne does not thereby loan its credit or become security, directly or indirectly, for any person or for any purpose. It simply stipulates that such moneys

as it may owe for water furnished to it will be paid to the bond creditors of the contractor instead of to him directly.

The provision is carefully guarded against the vices imputed to it.

The sixth and last ground for setting aside this contract is because of the option it contains for the purchase by the city of the water works.   Tested by the return, this complaint is entirely groundless.   The testimony taken under the rule, however, furnishes the evident cause for the exhibition of this reason : that the contractors, Washington & Beall, contemplate getting the water, to be by them supplied under the contract, from a source outside the State of New Jersey. The argument thereupon is that it will be illegal for the city of Bayonne, under its option, to purchase a foreign water-supply, and hence that the whole contract, of which the option is an integral part, is tainted with illegality.   The trouble with this course of reasoning is that it rests upon an untenable ground, for, conceding its legal premise to be correct, viz., that it would be unlawful under this contract to go out of the state for a water-supply, we can impute to the contractors the purpose so to do only by assuming that they will act illegally. I apprehend that, upon an attempt to deprive the city of its option by an illegal execution of their contract in this respect, the contractors could be effectively enjoined without the necessity of imputing to them a purpose hostile to the true undertaking of the parties.   It is sufficient at this time to say that the contract contains no illegal provisions, and that it will not (if the prosecutors' contentions be correct) admit of legal execution in the manner apprehended.

The *certiorari* is dismissed, with costs.